IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MARY JANE HARRIS and HENRY          *
HARRIS, JR.,                        *
                                    *
          Plaintiffs,               *
                                    *
     v.                             *          CV 106-202
                                    *
AUGUSTA, GEORGIA, RONNIE            *
STRENGTH, individually and          *
in his official capacity as         *
Sheriff of Richmond County,         *
JIMMY WYLDS, individually as        *
supervisor of Deputy Charles        *
McDowell and in his official        *
capacity as an officer of the       *
Richmond County Sheriff's           *
Office, and CHARLES MCDOWELL,       *
individually and in his             *
official capacity as an             *
officer of the Richmond             *
County Sheriff's Office,            *
                                    *
          Defendants.               *

---

**ORDER**

---

     Before the Court is Plaintiffs' Motion for Judgment by

Default Against Charles McDowell, individually.  (Doc. no.

76.)  Plaintiffs Mary Jane Harris and Henry Harris, Jr.

have brought this suit pursuant to 42 U.S.C. § 1983 for

alleged violations of constitutional rights under the

Fourth and Fourteenth Amendments.  (Am. Compl. ¶¶ 15-29.)

Specifically, Ms. Harris alleges that Defendant McDowell

used excessive force and arrested her without probable cause. (Id.) In addition to their § 1983 claims, Plaintiffs have also asserted various state law claims.[1] (Id. ¶¶ 30-45, 62-65.)

Defendant Charles McDowell waived service of process on or about February 3, 2007, at which time he was informed of his duty to respond under Rule 12 of the Federal Rules of Civil Procedure. (Doc. no. 18.) Defendant McDowell, however, failed to appear, plead, or otherwise defend himself in this action. On April 1, 2008, United States District Judge Lisa Godbey Wood instructed the Clerk to enter default against Defendant McDowell, in his individual capacity, and granted summary judgment in favor of all the other defendants. (Doc. no. 63.) Pursuant to the Court's instructions, the Clerk entered default against McDowell (Doc. no. 65) and the entry of default was mailed to Charles McDowell at the only addresses made available to the Court, 3017 Mesena Road, Thomson, Georgia, 30824, and the Joint Law Enforcement Center, located at 401 Walton Way, Room B - 275, Augusta, Georgia, 30911.

On August 13, 2009, Plaintiffs filed a Motion for Judgment by Default Against Defendant Charles McDowell

---

[1] While Plaintiffs originally asserted both § 1983 and related state law claims in their complaint, at the default judgment hearing Plaintiffs elected to exclusively pursue their § 1983 claims and Mr. Harris's loss of consortium claim.

pursuant to Federal Rule of Civil Procedure 55(b)(2). (Doc. no. 76.) After reviewing Plaintiffs' motion and the attached evidence, the Court scheduled a default judgment hearing. (Doc. no. 79.) The Court sent notice of this hearing to Defendant McDowell via certified mail to the Thomson, Georgia, address set forth above; the notice was returned as undeliverable. (Id., Attachs. 1 & 2; Doc. no. 80.)

A hearing was held on Thursday, February 11, 2010. (Doc. no. 81.) Plaintiffs were the only parties in attendance. To date, Defendant McDowell has still failed to appear, plead, or otherwise defend himself in this action. The Court has heard Plaintiffs' arguments, reviewed the evidence, read the applicable law, and hereby **GRANTS** Plaintiffs' Motion for Judgment by Default and awards damages to the extent set forth below.

## I. DEFAULT JUDGMENT STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). While default has already been entered in this case, in light of Defendant McDowell's complete failure to

appear, plead, or otherwise defend himself, "Defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for a judgment entered. . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] A defendant, by his default, is only deemed to have admitted the "plaintiff's well-pleaded allegations of fact. . . . " Id.

> Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.

Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (emphasis in original).

In the end, "three distinct matters [are] essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages." Pitts ex rel. Pitts v. Senecar Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). Based upon the allegations set forth in Plaintiffs' complaint, the Court finds that jurisdiction is proper

---

[2] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

here. The issues of liability and damages are addressed below.

## II. FINDINGS OF FACT

According to the allegations set forth in Plaintiffs' complaint, on January 4, 2005, Defendant Charles McDowell, a deputy for the Richmond County Sheriff's Office at the time, was dispatched to Plaintiff Mary Jane Harris's residence in response to a complaint of loud music. (Am. Compl. ¶ 8.) Upon arrival, McDowell asked for Ms. Harris's identification so that he could write her a citation. (Id. ¶ 9.) Ms. Harris refused, and, subsequently, McDowell forcibly removed her from inside her home. (Id.) After removing Ms. Harris from her home, Defendant McDowell sprayed Oleoresin Capsicum into Ms. Harris's eyes and face, and began beating her with his baton. (Id. ¶ 10.) Ms. Harris was charged with Interference With a Deputy and Excessive Noise, and subsequently arrested. (Id. ¶ 31.) McDowell later transported her to the Richmond County jail for booking. (Id. ¶ 10.) Judge William Jennings issued a Nolle Prosequi as to both charges on January 18, 2005. (Id. ¶ 31.)

At the time of the encounter, neither McDowell nor any bystanders were under an immediate threat of death or

bodily harm, and McDowell had no reason to believe anything to the contrary. (Id. ¶¶ 27, 37.) Furthermore, Ms. Harris never conducted herself in a threatening manner and was neither committing nor in the process of committing a felony offense. (Id. ¶ 27.) As a result of McDowell's actions, Plaintiff was severely injured and has suffered from severe emotional distress—her injuries have forced her to incur medical costs and discontinue work for a sustained period of time. (Id. ¶ 12.) McDowell was later cited for insubordination, unsatisfactory performance, unnecessary use of force, and, subsequently, dismissed from his job. (Id. ¶ 11.)

## III. DISCUSSION

### A. Liability

#### 1. 42 U.S.C. § 1983

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 for alleged constitutional violations arising from the use of force upon and arrest of Plaintiff Mary Jane Harris. "Section 1983 provides a federal cause of action for a plaintiff alleging that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the act or omission was committed by a person acting under color of

state law." <u>Dinardo v. Palm Beach County Circuit Judge</u>, 199 Fed. Appx. 731, 737 (11th Cir. 2006) (citations omitted).

"A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001). The Court finds that the facts set forth in Plaintiffs' complaint, taken as true, sufficiently establish that Defendant McDowell, working as a deputy with the Richmond County Sheriff's Department, was acting under color of state law at all times pertinent to the incident at issue in this suit. The remaining issue regarding liability—whether Defendant McDowell deprived Ms. Harris of a right, privilege, or immunity secured by the Constitution or laws of the United States—is addressed below.

### a. *Excessive Force*

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. . . . Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.

*Graham v. Connor*, 490 U.S. 386, 395-96 (1989) (citations omitted). This "reasonableness inquiry" is an objective one. *Id.* at 396. The Eleventh Circuit has held that, "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Benton v. Hopkins*, 190 Fed. Appx. 856, 859 (11th Cir. 2006) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002)); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) ("Generally, more force is appropriate for a more serious offense and less force is appropriate for a less serious one.").

This Court, as a result of Defendant McDowell's default, has no choice but to accept as true the well-pleaded factual allegations in Plaintiffs' complaint. Accordingly, the Court finds that the force exercised by McDowell in this instance was excessive and in violation of Ms. Harris's constitutional rights. Ms. Harris was charged with relatively minor crimes of limited severity, yet the force utilized by McDowell was severe and resulted in unnecessary injury to Ms. Harris. McDowell made use of his baton and pepper spray at a time when neither he nor any bystanders were at risk of immediate bodily injury or

death. Further, the complaint contains no facts indicating that Ms. Harris resisted arrest, attempted to flee, or otherwise gave McDowell any reason to utilize the level of force that he did. The Court hereby finds, based upon the facts set forth in the complaint, that McDowell should be subject to liability for his use of excessive force during the arrest of Plaintiff Mary Jane Harris.

### b. *No Probable Cause for Arrest*

Plaintiffs also assert in their complaint that Defendant McDowell "arrest[ed] [Ms. Harris] without probable cause," in violation of Ms. Harris's constitutional rights. (Am. Compl. ¶ 17.) "Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003). The Eleventh Circuit, however, has held that, "[P]laintiffs [have] the burden of demonstrating the absence of probable cause in order to succeed [on a] § 1983 claim." Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998) (citing Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1991) ("In order to establish a Fourth Amendment violation, [plaintiff] must demonstrate that a seizure occurred and that it was unreasonable.")).

> [Under federal law,] [f]or probable cause to
> exist . . . an arrest must be objectively

9

reasonable based on the totality of the circumstances. "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"

Lee, 284 F.3d at 1195 (quoting Rankin, 133 F.3d at 1435). The Supreme Court has also stated, in regard to arrests involving minor criminal offenses, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

The Court finds that Plaintiffs' complaint does not allege sufficient facts to permit this Court to find Defendant McDowell liable for making an arrest without probable cause. According to Plaintiffs' complaint, Defendant McDowell arrived at Ms. Harris's residence in response to a report of loud music coming from her home. (Am. Compl. ¶ 8.) McDowell asked Ms. Harris to provide some identification so he could write her a citation, and Ms. Harris refused. (Id. ¶ 9.) Subsequently, Ms. Harris was charged with interfering with a deputy, excessive noise, and arrested. (Id. ¶ 31.) These limited facts, without more, do not support a finding that McDowell

arrested Ms. Harris without probable cause, in contravention of 42 U.S.C. § 1983.[3]

### 2. Mr. Harris's Claim for Loss of Consortium

In addition to Ms. Harris's § 1983 claim, Plaintiff Henry Harris, Jr. has also brought an independent state law claim for loss of consortium. "A claim for loss of consortium is based on the loss of 'a property right growing out of the marriage relationship, and includes the exclusive right to the service of the spouse and to the society, companionship, and conjugal affection of each

---

[3] The Court recognizes that Plaintiffs state in their complaint, "Defendant McDowell deprived Plaintiff of her liberty . . . by arresting her without probable cause" (Am. Compl. ¶ 17), but, upon a motion for default judgment, the defaulting party "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu, 515 F.2d at 1206; see also Graves v. Estelle, 556 F.2d 743, 746 (5th Cir. 1977) ("Reasonable belief, as an element of probable cause, is a factual determination, but the conclusion that a belief rises to the level demanded by the Fourth Amendment is a conclusion of law.")

The Court also recognizes that the facts of this case raise questions regarding whether Defendant McDowell entered Ms. Harris's home without a warrant to effectuate the arrest, in which case the arrest would be presumptively unreasonable. See Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1328 (11th Cir. 2006) ("As the foregoing makes clear, a warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant."). Plaintiffs' complaint, however, does not clearly set forth facts establishing whether or not Defendant McDowell actually entered Ms. Harris's home without a warrant nor does it set forth facts establishing whether or not Ms. Harris was completely within the confines of her home at the time she was removed. See McClish v. Nugent, 483 F.3d 1231, 1242 (11th Cir. 2007) ("Warrantless entry into the home is . . . unreasonable, subject only to a few 'jealously and carefully drawn' exceptions.") Furthermore, Plaintiffs, at no point, have clearly asserted a violation of their constitutional rights based upon allegations that Defendant McDowell entered their home without a warrant.

Regardless, the success of either of these claims would not have appreciably affected the damages determination in light of the fact that this Court found that Plaintiffs' complaint sets forth sufficient facts to support a claim of excessive force, in violation of the Fourth Amendment.

other.'" Sevcech v. Ingles Mkts., Inc., 222 Ga. App. 221,

225 (1996) (quoting Arnac v. Wright, 163 Ga. App. 33, 34

(1982)). For a claim such as this to be actionable, it

"must arise from a 'tortious injury inflicted [upon the

spouse],'" Pattee v. Ga. Ports Auth., 477 F. Supp. 2d 1272,

1277 (S.D. Ga. 2007) (quoting Walden v. Coleman, 105 Ga.

App. 242, 243 (1962)), and the plaintiff must show evidence

of both liability and damages.   See Smith v. Tri-State

Culvert Mfg. Co., 126 Ga. App. 508, 510 (1972) (stating

that in order to succeed on loss of consortium claim,

plaintiff "must introduce evidence sufficient to pass

muster on two fronts, these being (1) liability and (2)

damages.")

    The Court finds that the complaint, taken as true,

sets forth sufficient facts to establish both liability,

see Pattee, 477 F. Supp. 2d at 1278 ("Thus, Georgia courts

would reject defendant's argument that a § 1983 claim

cannot provide the first element of a loss of consortium

claim; this Court must do likewise."), and damages.

According to the complaint, Plaintiff Mary Jane Harris

suffered severe physical and emotional harm as a result of

Defendant McDowell's unlawful actions; as a direct

consequence of these injuries, Plaintiff Henry Harris, Jr.

was deprived of his wife's society, affections, services, and aid.

### B. 42 U.S.C. § 1983 Damages

Plaintiffs, in their motion for default judgment, have requested an award of both compensatory and punitive damages based upon McDowell's violations of Ms. Harris's constitutional rights. (Doc. no. 76 at 6-7.) Plaintiffs have submitted evidence in support of their requests, both in conjunction with their motion and at the hearing held before this Court on February 11, 2010.

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986). "Thus, plaintiff is entitled to recover actual losses caused (directly and proximately) by the defendants' tort." Pattee v. Ga. Ports Auth., 512 F. Supp. 2d 1372, 1379 (S.D. Ga. 2007). "In addition to damages based on monetary loss or physical pain and suffering, under the law a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation." Slicker v. Jackson, 215 F.3d 1225,

1231 (11th Cir. 2001). Punitive damages are also recoverable in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Lambert v. Fulton County, 253 F.3d 588, 597 (11th Cir. 2001).

### 1. Compensatory Damages

#### a. Medical Costs

Plaintiffs in § 1983 actions are, first and foremost, entitled to compensation for any "out-of-pocket loss and other monetary harms" caused by a defendant's violation or violations of § 1983. Slicker, 215 F.3d at 1229. Plaintiffs have submitted considerable evidence of medical expenses and lost income alleged to have arisen from the injuries Defendant McDowell inflicted upon Ms. Harris.

Ms. Harris has provided the Court with an affidavit which reads as follows: "[T]he injuries I sustained [at the hands of Defendant McDowell] caused me to seek medical treatment. My medical costs totaled $4,931.95. My doctors prescribed me numerous prescriptions which I had filled. The total cost for those prescriptions was $5,386.87." (M. Harris Aff. ¶ 7.) In further support of their request for compensation for medical-related costs, Plaintiffs provided the Court with certified medical and pharmaceutical records

spanning the dates applicable to this lawsuit. Plaintiffs also, at the default judgment hearing, elicited testimony from Ms. Harris's current doctor, Dr. Hillson, who has been treating Ms. Harris since November 5, 2005. Dr. Hillson verified much of what is already in the record; he discussed Ms. Harris's symptoms and treatment and identified the prescriptions in the record (doc. 76, Ex. 4) that were prescribed to address the injuries caused by Defendant McDowell.

Based upon Dr. Hillson's testimony and the other evidence presented, the Court finds that Plaintiffs have sufficiently supported their request for an award of damages for the medical and prescription costs incurred as a result of the injuries inflicted upon Ms. Harris by Defendant McDowell. Plaintiff Mary Jane Harris is hereby awarded $10,318.82 in compensatory damages to cover these costs.

### b. Loss of Income

Based upon what has been most recently presented to the Court, Plaintiffs are seeking $25,344.00 for the loss of income that allegedly resulted from Ms. Harris's inability to continue working after she was injured by Defendant McDowell. (Doc. no. 82 at 2.) In support of Ms. Harris's request, Plaintiffs filed verified statements and

check receipts with the Court. (Doc. no. 82.) According to Ms. Harris, "[H]er injuries . . . prevented [her] from working for a period of two years." (M. Harris Aff. ¶ 8.) Based upon Plaintiffs' sworn statements, both Ms. Harris and Mr. Harris were previously employed by Georgia Mentor as foster parents between July 2002 and January 2005. (Doc. no. 82 at 2 & 8.) Ms. Harris was the primary caregiver and was employed consistently with Georgia Mentor from July 2002 to January 2005. (Id.) Ms. Harris received approximately $528.00 twice each month from Georgia Mentor. (Id. at 2.) This rate of pay is consistent with the check receipts submitted in support of Ms. Harris's request for lost income. (Id. at 10-17.) Based upon the evidence presented, the Court finds that Plaintiff Mary Jane Harris is entitled to $25,344.00 in compensatory damages for income lost as a result of the injuries inflicted upon her by Defendant McDowell.

> c. *Pain and Suffering, Mental/Emotional Distress, Impairment of Reputation, and Humiliation*

In addition to damages for out-of-pocket costs, plaintiffs in § 1983 actions are also permitted to recover compensatory damages for physical pain and suffering, demonstrated mental and emotional distress, impairment of reputation, and humiliation. See Slicker, 215 F.3d at

16

1231. Ms. Harris asserts that she is entitled to $60,000.00 in compensatory damages as a result of the "severe physical, mental and emotional injuries" she incurred as a result of the assault by Defendant McDowell. (Doc. no. 76 at 2.)

The evidence presented in support of Ms. Harris's claim for compensatory damages tends to show that Defendant McDowell sprayed Ms. Harris in the face with pepper spray, kicked her, kneed her, and struck her with his baton, all while she was handcuffed in front of her home. (M. Harris Aff. ¶ 4.) Ms. Harris asserts that Defendant McDowell's assault caused her humiliation, extreme pain, and left her with injuries to her arm and lungs, bruises all over her body, and damage to her eyes. (Id. ¶¶ 4 & 7; Doc. no. 76, Ex. 5.) As a result of these injuries, Ms. Harris obtained emergency medical treatment the day of the incident (doc. no. 76, Ex. 5), and has continued receiving medical treatment ever since due to complications arising from her injuries (H. Harris Aff. ¶ 4; M. Harris Aff. ¶ 7; Doc. no. 76, Ex. 6). These injuries also prevented Ms. Harris from engaging in marital relations for eight (8) months and performing household chores for one (1) year. (M. Harris Aff. ¶¶ 8-9.) At the default judgment hearing, Dr. Hillson, Ms. Harris's current doctor, stated that Ms.

Harris's recovery has been particularly drawn out and painful due to the exacerbation of preexisting medical conditions, including arthritis. Dr. Hillson noted that Ms. Harris continues to have muscle spasms and muscle soreness, particularly in her back, which limits her ability to do certain things, such as carrying items, bending, standing, and sitting for extended periods of time.

The Court finds that Plaintiffs have successfully shown that McDowell's actions caused Ms. Harris severe pain and suffering over an extended period of time, extreme emotional distress, and personal humiliation. Having considered all the evidence and the findings set forth above, the Court finds that an award of $60,000.00 is appropriate.

### 2. *Punitive Damages*

Plaintiffs have requested $100,000.00 in punitive damages to "punish McDowell or to deter others like McDowell from committing such conduct in the future." (Doc. no. 76 at 3.) Plaintiffs allege that McDowell has admitted, through his failure to respond, "that he indifferently and callously violated Plaintiff Harris's constitutional rights, and did so with evil intent." (Id.)

"The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." Memphis, 477 U.S. at 307 n.9. Such damages can only be granted upon a showing of the required intent; in a § 1983 case, a plaintiff must show that the defendant's conduct was "motivated by evil motive or intent" or "involve[d] reckless or callous indifference to the federally protected rights of others." Lambert, 253 F.3d at 597.

Based upon the evidence presented, the Court finds an award of punitive damages is proper here. There is no evidence in the record that Ms. Harris ever resisted arrest or did anything to justify being pepper sprayed, struck repeatedly with a baton, or kicked, all while restrained with handcuffs. (M. Harris Aff. ¶ 4.) The Court finds that Defendant McDowell's unjustified use of excessive force was likely motivated by evil intent, and, at the very least, demonstrates a complete disregard for Ms. Harris's constitutional rights.

Taking into account the fact that Defendant McDowell has already been fired as a result of his actions (Id. ¶ 6), the Court finds that an award of $25,000.00 in punitive damages is sufficient in this case.

## C. Damages for Loss of Consortium

"Damages for loss of consortium are not capable of exact pecuniary measure and must be left to the enlightened conscience of impartial jurors taking into consideration the nature of the services, society, companionship and all the circumstances of the case." Mortensen v. Fowler-Flemister Concrete, Inc., 252 Ga. App. 395, 397 (2001) (citation omitted).

Plaintiffs have submitted, in support of their motion for default judgment, the affidavit of Henry Harris, Jr., the husband of Plaintiff Mary Jane Harris. Mr. Harris, in his affidavit, states that, due to Ms. Harris's injuries, the two "were unable to engage in marital relations for 8 months" and Ms. Harris "was unable to contribute to household chores and responsibilities for at least 1 year." (H. Harris Aff. ¶ 5.) These facts were largely reiterated by Ms. Harris in her affidavit (M. Harris Aff. ¶ 9) and substantially supported by the testimony of Dr. Hillson.

In light of Mr. Harris's loss of consortium, demonstrated by the evidence presented, the Court hereby awards Plaintiff Henry Harris, Jr. the sum of $10,000.00.

## D. Attorney's Fees

Plaintiffs originally requested an award of $23,220.00 for attorney's fees. (Doc. no. 76 at 7.) This request was submitted in conjunction with supporting affidavits from Plaintiff Mary Jane Harris and her attorney, Ms. Rhea S. Johnson. Ms. Harris's affidavit states the following regarding attorney's fees: "My attorney's fees to date are $23,220.00, as a result of McDowell's physical assault upon me." Ms. Johnson's affidavit sets forth her hourly rate ($185.00 per hour) and the number of hours (112) she spent working on this case. (Johnson Aff. ¶¶ 4-5.) After the default judgment hearing, Plaintiffs' attorney, Ms. Johnson, filed a timesheet that sets forth, in very limited detail, the hours billed and the applicable work performed. (Doc. no. 84.)[4] The time sheet identifies 70.00 billed hours, which, at a rate of $185.00 per hour, amounts to a final request of $12,950.00.

"In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. §

---

[4] The timesheet was first submitted to the Court at the default judgment hearing on February 11, 2010. The supplement referred to here (doc. no. 84) is identical, except that, in the most recently filed timesheet, Ms. Johnson has excluded hours spent addressing Plaintiffs' response to Defendants Augusta, Georgia, Strength, and Wylds' motions for summary judgment.

1988. "Because Section 1988 is designed to vindicate federal constitutional and statutory rights, a prevailing plaintiff ordinarily should recover attorneys' fees." Popham v. City of Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987).

### 1. Reasonable Hourly Rate

> [T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. . . . [T]he parties ought to provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients . . . . so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar.

Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299-1300 (11th Cir. 1988).

"The 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee." Martin v. Univ. of S. Ala., 911 F.2d 604, 610 (11th Cir. 1990). In addition, the determination of whether a rate is reasonable can be based upon a court's own knowledge and

experience. See Norman, 1292 F.2d at 1303 ("[W]here the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience.").

Plaintiffs' attorney, Ms. Johnson, states in her affidavit, "I have been practicing law for five years. . . . My hourly rate is $185.00. My hourly rate does not exceed the average hourly rate charged by attorneys in my area with comparable experience." (Johnson Aff. ¶¶ 3-4.) Ms. Johnson, however, has not revealed to the Court anything specific about her legal background or prior experience as an attorney, nor has she identified an area of expertise. She has also not provided the Court with any evidence of rates actually billed and paid in similar lawsuits to attorneys with her experience. See Norman, 1292 F.2d at 1299 ("Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work . . . . [S]atisfactory evidence [of attorney's fees] necessarily must speak to rates actually billed and paid in similar lawsuits."). In light of the lack of substantial evidence to support Ms. Johnson's rate, the Court finds it is left with no other choice than to rely, at least to a limited degree, on its own knowledge and experience

concerning the reasonable rate for an attorney with Ms. Johnson's skills, experience, and reputation.

Four months after the entry of default against Defendant McDowell (doc. no. 65) and the grant of summary judgment to all other defendants in this case (doc. no. 63), the Court found it prudent to close this case due to a prolonged period of inactivity (doc. no. 73). Plaintiffs did not file anything indicating a desire to pursue a final default judgment until this action by the Court. When Plaintiffs finally did file a motion for default judgment, they supplied the Court with an accompanying brief that demonstrated a clear misunderstanding of the implications of the Clerk's previous entry of default.[5]  (Doc. no. 76, Ex. 1.)

Furthermore, after a thorough review of Ms. Johnson's seventy (70.00) billed hours—almost all of which are exclusively related to the present motion for default judgment—the Court finds that the quantity of hours is inordinate and reflective of an attorney with limited experience and skill in the area of law at issue in this case, such that a fee of $185.00 per hour is not warranted

---

[5] Plaintiffs' brief in support of their motion for default judgment erroneously implies that a clerk's entry of default amounts to a determination of liability. (See Doc. no. 76, Ex. 1 at 1 ("Because this Court has found McDowell in default and therefore liable to Plaintiffs in this Section 1983 action, this Court must now consider the issues of damages . . . .")); see also, Nishimatsu, 515 F.2d at 1206 ("[A] default is not treated as an absolute confession by the defendant of his liability and the plaintiff's right to recover.")

here. For example, the Court notes that Ms. Johnson billed eleven (11) hours in preparing for the approximately forty-minute default judgment hearing that addressed relatively straight-forward legal issues. These hours do not include the time spent traveling to the hearing (5) and the time spent preparing the brief in support of the motion for default judgment (5), which, for the most part, included most of the information presented at the hearing. Ultimately, the Court finds that the time Ms. Johnson spent preparing for the hearing and performing many of the other tasks required in this case does not reflect the experience and skill of an attorney warranting a $185.00 per hour rate.

While the Court takes no issue with Ms. Johnson's final product or the truth of her affidavit, the Court simply finds that Ms. Johnson's knowledge, experience, and skill, as demonstrated by the work performed, is not reflective of the rate requested. See Norman, 836 F.2d at 1301 ("A lawyer who has to educate himself generally [regarding trial practice or the substantive law] may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.") Accordingly, the Court

finds, based on its own knowledge of the Augusta legal market, that a $135.00 per hour rate is more reasonable, considering Ms. Johnson's demonstrated experience, skills, reputation, and the issues relevant to Plaintiffs' request for attorney's fees.

### 2. *Hours Reasonably Expended*

"The next step in the computation of [reasonable attorney's fees] is the ascertainment of reasonable hours. . . . '[E]xcessive, redundant or otherwise unnecessary' hours should be excluded from the amount claimed." Id. at 1301 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "[H]ours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel*." Norman, 836 F.2d at 1301 (emphasis in original).

After reviewing the hours submitted by Ms. Johnson, the Court finds that none of the 70.00 hours billed "would be unreasonable to bill to a client," thus none shall be excluded from the Court's computation of attorney's fees. Id. at 1301. Based upon this settled number of hours (70.00) and a reasonable hourly rate of $135.00, the Court hereby awards Plaintiffs $9,450.00 for attorney's fees, pursuant to 42 U.S.C. § 1988.

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs' motion for judgment by default against Defendant Charles McDowell individually (doc. no. 76) is hereby **GRANTED** in accordance with this Order.

It is hereby **ORDERED** that Plaintiff Mary Jane Harris is entitled to the following in damages, pursuant to 42 U.S.C. § 1983: 1) $95,662.82 in compensatory damages; and 2) $25,000.00 in punitive damages. It is **FURTHER ORDERED** that Plaintiff Henry Harris, Jr. is entitled to damages for loss of consortium in the amount of $10,000.00. Finally, Defendant McDowell is **ORDERED** to pay Plaintiffs' attorney's fees, in the amount of $9,450.00.

**ORDER ENTERED** at Augusta, Georgia, this _31st_ day of March, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA